LA DUE & CO., Plaintiff-Appellant,

v.

William P. ROGERS, Attorney General,
as Successor to the Alien Property
Custodian, Defendant-Appellee.

No. 12287.

United States Court of Appeals
Seventh Circuit.

Oct. 13, 1958.

Nathan Shefner, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., George B. Searls, Marbeth A. Miller, Attys., Dept. of Justice, Washington, D. C., Dallas S. Townsend, Asst. Atty. Gen., Irwin A. Seibel, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before MAJOR, SCHNACKENBERG and PARKINSON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court dismissing on its merits, after trial, an action brought under Section 9(a) of the Trading with the Enemy Act, as amended (40 Stat. 411, 50 U.S. C.A.Appendix, § 1 et seq.) (sometimes referred to as "the Act"). The action was for the recovery of certain bearer bonds which had been vested in the Attorney General under the authority of the Act.

Plaintiff, an Illinois corporation, is engaged in the business of servicing, on commission, securities sent it by various customers for sale and collection. Gibbon Alonso, a Mexican corporation (sometimes referred to as "the Mexican firm") was one of LaDue's regular customers. One Herman W. Brann is the sole owner of all the stock of LaDue and also a vice president of the Mexican firm. He is a former Air Force officer whose business residence is the International Zone of Tangier, Morocco, with a legal residence in the City of Chicago.

The securities involved (bearer bonds issued by the St. Louis Southwestern Railroad Company and the City of New York) were sent by the Mexican firm to LaDue on or about December 15, 1952 and January 5, 1953, after LaDue was advised by Brann to request delivery from the Mexican firm.

On February 7, 1952 and April 13, 1953, the Attorney General of the United States, as successor to the Alien Property Custodian,[1] issued Vesting Order Nos. 18759 and 19266, respectively. By these orders he vested in himself for the benefit of the United States the obligations represented by the securities in question, after determining that they were property which, prior to January 1, 1947, was owned by persons who there was reasonable cause to believe were enemy nationals.

On July 27, 1954, LaDue filed a complaint in the District Court, seeking a return of the securities. The complaint was dismissed on motion for lack of jurisdiction. This Court affirmed, holding: (1) LaDue had failed to file a notice of claim with the Attorney General, as required by the Act, as a condition to bringing an action to recover vested property, and (2) the vesting of the property in question was constitutional. LaDue & Company v. Brownell, 7 Cir., 220 F.2d 468, certiorari denied 350 U.S. 823, 76 S.Ct. 50, 100 L.Ed. 736.

On October 13, 1955, LaDue filed a notice of claim, in which it was stated, among other things, that the property involved had been transferred to it by the Mexican firm and that the nature and terms of such transfer were "for the purpose of collecting accrued interest and applying proceeds to adjustment of accounts." It was also stated in the claim that no consideration had been paid for the property and that there was to be paid "any balance that may hereafter become due and payable." On refusal of defendant to allow the claim, LaDue, on December 14, 1955, brought the instant action. In the complaint plaintiff alleged that it was the owner of the securities involved, which allegation was denied by defendant's answer.

The District Court, after trial, among other things found that plaintiff had possession at all times of the securities involved, after their transmission to it by the Mexican firm, but that plaintiff was only "the agent for the collection of the securities * * * that plaintiff has failed to establish who was the real and beneficial owner of the securities * *," and that "plaintiff has failed to establish acquisition of any beneficial interest in the securities."

The Court concluded:

"1. In an action brought under Section 9(a) of the Trading with the Enemy Act (50 U.S.C.A.Appendix sections 1 et seq.) the plaintiff bears the burden of proof in establishing the right, title and inter-

---

1. By virtue of Executive Order No. 9788, October 15, 1946 (11 Fed.Reg. 11981, 3 C.F.R. 1946 Supp. 169), 50 U.S.C.A.Appendix, § 6 note, the Attorney General succeeded to the functions and duties of the Alien Property Custodian.

est sought to be recovered in the vested property.

"2. It is not sufficient that the plaintiff establish that it is the agent of the owner, but it must establish that it is the beneficial owner of the interest sought to be recovered in the action.

"3. The plaintiff, LaDue and Co., has failed to establish that it has any beneficial right, title or interest in the vested property involved in the action."

Predicted upon such findings and conclusions, the trial Court, on January 3, 1958, entered its order dismissing the action on its merits. From this order plaintiff appeals.

■ Plaintiff asserts that the findings of the District Court relative to its interests in the securities involved are clearly erroneous. We disagree. The record discloses that they are amply supported. More than that, we agree that the conclusions of law are sound. As already shown, plaintiff in its claims for a return of the securities stated that they were received by it for the purpose of collection. Mr. Shefner, the attorney and secretary of plaintiff, testified that the securities were received by plaintiff "with instructions to service them, collect the unpaid interest and to sell the same on the open market, as we did with most of the other securities." Mr. Johnson, another attorney for plaintiff, on March 31, 1953, wrote the Custodian that he understood the Mexican firm "are either the owners of all or part of the securities." On the same date, LaDue wrote the Deputy Director that the securities are owned by "Gibbon Alonso y Cia." Thus, it is plain from plaintiff's own evidence that it was not the real owner of the securities and that it, as agent, had title and possession only for the purpose of collection. In fact, there is no satisfactory proof as to who actually owned the securities. It might have been Brann, it might have been the Mexican firm from whom they were received by plaintiff, or it might have been

some other party who placed them in the hands of the Mexican firm for collection.

The action was brought under Sec. 9 (a) of the Act, which provides in pertinent part as follows:

"Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been * * * seized by him [the Alien Property Custodian] hereunder * * * may institute a suit in equity * * * to establish the interest, right, [or] title * * * so claimed, and if so established the court shall order the payment * * to said claimant of the money or other property so held by the Alien Property Custodian * * * or the interest therein to which the court shall determine said claimant is entitled."

It is admitted that plaintiff is "not an enemy or ally of enemy." The same admission is made as to Brann and the Mexican firm, the latter a corporation of Mexico, an ally of this country in World War II.

As grounds for reversal, plaintiff relies on two propositions: (1) that possession of bearer paper is prima facie evidence of title and sufficient to entitle the holder to sue thereon, and (2) that the burden was on the defendant to prove by a preponderance of the evidence that the vested property was owned by an ascertained national of Germany on the date of Vesting Order No. 19266 (issued April 13, 1953).

■ In support of its first ground plaintiff cites a number of Illinois cases which hold that under the Negotiable Instruments Act possession of bearer securities is sufficient to authorize the possessor to maintain an action against the obligor. Assuming that such is the law, the principle announced is without application and of no benefit to plaintiff in the instant matter. This action is brought under the Trading with the Enemy Act, a consent statute and plaintiff's rights, if any, must be adjudicated

in accordance with its provisions. Section 7(c) provides:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian * * shall be that provided by the terms of this Act * * *."

Thus, the remedy provided is exclusive. See Tiedemann v. Brownell, 96 U.S.App. D.C. 9, 222 F.2d 802, 804.

■ The cases appear to be harmonious that a plaintiff in an action under Sec. 9(a) of the Act, as a prerequisite to the right to recover, must sustain the burden of proving that he is the real owner of the property or, as sometimes said, the beneficial owner. Mere title or possession is not sufficient. In Feller v. McGrath, D.C., 106 F.Supp. 147, at page 149, affirmed Feller v. Brownell, 3 Cir., 201 F.2d 670 the Court stated:

"Section 9(a) of the Trading with the Enemy Act requires that a plaintiff 'establish' the 'interest, right, or title' he claims. This means plaintiff has the burden of establishing that he is the beneficial owner of the property involved. [Citing cases.] Beneficial ownership is the heart of the case; it is a part of plaintiff's *prima facie* case."

In Kaufman v. Brownell, 101 U.S.App. D.C. 147, 247 F.2d 553, 556, the Court stated:

"Section 9(a) of the Act provides that when the court in an equity action finds an individual claimant's interest has been established, it shall order the 'payment, conveyance, transfer, assignment, or delivery * * * of the money or other property * * * or the interest therein to which the court shall determine said claimant is entitled'; not the property or interest therein of some *other* claimant, or even of all claimants similarly situated, but of that to which 'said claimant' is entitled, as established in the suit he instituted."

In Kaname Fujino v. Clark, 9 Cir., 172 F.2d 384, it was held that plaintiff could not recover under Section 9(a) by merely showing that he was the owner of the record title, that he must also prove that he was the beneficial owner.

■ As previously noted, plaintiff in its complaint made the allegation, essential we think, that it "was the owner of the securities involved." This allegation was denied by defendant. Thus, the burden was cast upon plaintiff to establish the material allegations of its complaint, including that of ownership. This, as shown, it failed to do, as tacitly conceded by plaintiff in its argument that title and possession were sufficient. The reason for the burden thus cast upon plaintiff is plain. Otherwise, the vesting order could be readily defeated and the purpose of the Act thwarted by the enemy holder of securities placing them in the hands of an American broker or other agency for collection. Aside from the provisions of the Act, there is nothing unreasonable about requiring the actual or beneficial owner to come into court and establish such ownership as a prerequisite to the right to recover from the Custodian.

■ There is even less merit in plaintiff's contention that a burden was cast upon defendant to prove that the vested property was owned by an ascertained national of Germany on the date of vesting. This contention is fully answered in Becker Steel Company of America v. Cummings, 296 U.S. 74, 79, 56 S.Ct. 15, 18, 80 L.Ed. 54:

"Section 7 of the Trading with the Enemy Act conferred on the Alien Property Custodian authority summarily to seize property upon his determination that it was enemy owned, and such a seizure was lawful even though the determination were erroneous. Central Union Trust Co. of New York v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Commercial Trust Co. v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858.

But in thus authorizing the seizure of property as a war measure Congress did not attempt the confiscation of the property of citizens or alien friends. See Henkels v. Sutherland, supra, 271 U.S. 298, 301, 46 S.Ct. 524, 70 L.Ed. 953. Instead by section 9(a) it gave to the nonenemy owner the right to maintain a suit for the recovery of the seized property or its proceeds, and at the same time, by the all-inclusive language of section 7(c) it denied to him any other remedy."

In addition to the cases cited in the quotation from Becker, see United States v. Chemical Foundation, Inc., 272 U.S. 1, 11, 47 S.Ct. 1, 71 L.Ed. 131; Cummings v. Deutsche Bank, 300 U.S. 115, 120, 57 S.Ct. 359, 81 L.Ed. 545.

In our judgment, this case was decided correctly on its merits. We find no occasion, therefore, to consider defendant's contention that the Court erred in its refusal to dismiss the complaint on the ground that the action was barred by the limitations set forth in Sec. 33 of the Act.

The judgment appealed from is Affirmed.